**18 MAG 1111**

Approved: *Mollie Bracewell*
MOLLIE BRACEWELL
Assistant United States Attorney

Before:   THE HONORABLE STEWART D. AARON
          United States Magistrate Judge
          Southern District of New York

------------------------------- x
                                :   SEALED COMPLAINT
UNITED STATES OF AMERICA        :
                                :   Violations of
            - v. -              :   18 U.S.C. §§ 1349,
                                :   1028A and 2
ROBBIE BLACK,                   :
WILDOPH BRUMAIRE,               :   COUNTY OF OFFENSE:
DARREN THOMAS,                  :   NEW YORK
SIERRA CAMERON,                 :
SIRE GAYE,                      :
PIERRE SCHNEIDER, and           :
ANTHONY CASTILLO,               :
                                :
            Defendants.         :
                                :
------------------------------- x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   DANIEL HERZOG, being duly sworn, deposes and says that he is a Detective with the New York Police Department ("NYPD"), and charges as follows:

## COUNT ONE

(Conspiracy to Commit Bank Fraud)

   1.   From at least on or about August of 2017, up to and including November of 2017, in the Southern District of New York and elsewhere, ROBBIE BLACK, WIDOLPH BRUMAIRE, DARREN THOMAS, SIERRA CAMERON, SIRE GAYE, PIERRE SCHNEIDER, and ANTHONY CASTILLO, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

   2.   It was a part and object of the conspiracy that ROBBIE BLACK, WIDOLPH BRUMAIRE, DARREN THOMAS, SIERRA CAMERON, SIRE

GAYE, PIERRE SCHNEIDER, and ANTHONY CASTILLO, the defendants, and others known and unknown, willfully and knowingly, executed, and attempted to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

COUNT TWO

(Aggravated Identity Theft)

3.   From at least in or about August of 2017 up to and including at least in or about November of 2017, in the Southern District of New York and elsewhere, ROBBIE BLACK, WIDOLPH BRUMAIRE, DARREN THOMAS, SIERRA CAMERON, SIRE GAYE, PIERRE SCHNEIDER, and ANTHONY CASTILLO, the defendants, did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, BLACK, BRUMAIRE, THOMAS, CAMERON, GAYE, SCHNEIDER, and CASTILLO possessed and used the names and bank account numbers of multiple persons for the purpose of furthering fraudulent withdrawals through these persons' bank accounts, during and in relation to the conspiracy to commit bank fraud charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b) and 2)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.   I have been a Detective with the NYPD for four years. During this time, I have conducted numerous investigations into various financial frauds, including bank fraud, and am familiar with the way such crimes are committed.

5.   I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, my conversations with other law enforcement officials, and my examination of various reports and records.  Because this

affidavit is submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Scheme

6. Based on my involvement in this investigation, I have learned, in substance and in part, the following:

    a. ROBBIE BLACK, WIDOLPH BRUMAIRE, DARREN THOMAS, SIERRA CAMERON, SIRE GAYE, PIERRE SCHNEIDER, and ANTHONY CASTILLO, the defendants, and other co-conspirators known and unknown, undertook a scheme to defraud multiple national banks by recruiting collusive accountholders willing to allow fraudulent withdrawals through their bank accounts. As part of this scheme, BLACK, BRUMAIRE, THOMAS, CAMERON, GAYE, SCHNEIDER, and CASTILLO shared amongst themselves, including through their social media accounts like Snapchat, the personal identifying information of collusive accountholders.

    b. As part of this scheme BLACK, BRUMAIRE, THOMAS, CAMERON, GAYE, SCHNEIDER, and CASTILLO also shared account information for various legitimate victim businesses, which account information was then used on counterfeited checks.

    c. When making fraudulent deposits, the defendants and other co-conspirators known and unknown frequently used automated teller machines ("ATM") to make deposits. The defendants, along with other co-conspirators known and unknown, frequently employed a distinctive tactic in making ATM deposits. The defendants mistyped the amount of the counterfeit checks and entered a deposit amount that reflected only approximately the "cents" portion of the counterfeit checks. Victim banks later issued "account adjustments" and credited the account to reflect the amount on the fraudulent check.

    d. Based upon my training and experience, I believe that the tactic (a "Cents Deposit") was intended to increase the amount of funds immediately available upon making the ATM deposit. A bank typically makes available some percentage of a deposited check until the entire check has been cleared by the remitting bank. I believe that the defendants intended to circumvent this limitation based on a belief that

3

the entire amount of the check, if categorized as an "account adjustment" rather than a "check deposit," became available immediately.

        e.    The defendants and other co-conspirators withdrew funds from the collusive accounts into which the fraudulent checks had been deposited. At least some of these deposits and withdrawals took place in bank branches in Manhattan, New York, in the Southern District of New York.

        f.    Scheme participants used the social media application Snapchat to exchange information about legitimate victim businesses, whose accounts were then exploited on fraudulent checks. Specifically, scheme participants exchanged images of legitimate checks issued by victim businesses, which showed their account numbers and identified the victim businesses's banks.

        g.    Scheme participants also used Snapchat to exchange information about collusive accountholders whose accounts were exploited through the scheme. Scheme participants communicated information about collusive accountholders, including names, address, dates of birth, and account numbers, to other scheme participants using Snapchat.

### Definitions

    7.    Based on my review of publicly available content from the social media website Snapchat, and non-publicly available content from certain Snapchat accounts pursuant to lawfully obtained search warrants, I have learned the following facts, among others:

        a.    **BLACK Snapchat Account**: The owner of the Snapchat account with the unique username "livinggoodteddy" appears to be the defendant ROBBIE BLACK (the "BLACK Snapchat Account"), based on the following facts, among others:

        i.    Numerous photographs posted by the user feature BLACK, who I recognize based on, among other things, my familiarity with BLACK from prior investigations.

        ii.    On or about October 24, 2017, the user posted an image of an opened item of mail with the recipient's name partially visible as "ROBB-," several debit cards, and text that reads "Walk in the crib with mail on the table with these in it."

      iii. BLACK is associated with the Instagram account "@therealteddo," which also shows numerous photographs of BLACK. An Instagram post on this account identifies the Snapchat account "livinggoodteddy" as belonging to the same user.

      iv. On or about November 22, 2017, law enforcement agents executed a search warrant on the BLACK Snapchat Account. Non-public content obtained through the search warrant includes many additional photographs of BLACK, and lists the email address associated with the account at the time of its creation as robbieblack340@yahoo.com.

   b. **BRUMAIRE Snapchat Account**: The owner of the Snapchat account with the username "Flossy.staypaid" appears to be the defendant WIDOLPH BRUMAIRE (the "BRUMAIRE Snapchat Account"), based on the following facts, among others:

      i. Numerous photographs posted on the account feature BRUMAIRE, who I recognize based on, among other things, my familiarity with him from prior investigations.

      ii. On or about October 19, 2017, the account showed a photograph of an American Airlines boarding pass in the name of "Widolph Brumaire." BRUMAIRE was taken into custody by law enforcement officers after disembarking from the same flight.

      iii. On or about October 30, 2017, law enforcement agents executed a search warrant on the BRUMAIRE Snapchat Account. Non-public content obtained through the search warrant includes many additional photographs of BRUMAIRE, some of which appear to have been taken by BRUMAIRE.

   c. **GAYE Snapchat Account:** The owner of the Snapchat account with the unique username "Runitup_leeky" appears to be the defendant SIRE GAYE (the "GAYE Snapchat Account"), based on the following facts, among others:

      i. Based on records obtained pursuant to a lawfully obtained search warrant for the BRUMAIRE Snapchat Account, I have learned that on or about September 1, 2017, the "Runitup_leeky" Snapchat Account provided a contact phone number to the BRUMAIRE Snapchat Account.

      ii. Based on a review of public records, I have learned that the contact phone number is registered to GAYE.

   d. **SCHNEIDER Snapchat Account:** The owner of the Snapchat account with the unique username "treystaypaid" appears

5

to be the defendant PIERRE SCHNEIDER (the "SCHNEIDER Snapchat Account"), based on the following facts, among others:

    i. Based on my review of publicly available data from Facebook, I have learned, in part, that SCHNEIDER also owns a Facebook account with the username "Trey Alluminati." Among other things, the "Trey Alluminati" profile picture shows SCHNEIDER, with whom I am familiar from earlier investigations. Co-defendant SIRE GAYE, on a Facebook account then under GAYE's name, posted a publicly available photograph identifying SCHNEIDER as owner of the "Trey Alluminati" Facebook account ("SCHNEIDER Facebook Account").

    ii. On or about May 25, 2016, the SCHNEIDER Facebook Account made a public posting that identified "treystaypaid" as his Snapchat username.

  e. **THOMAS Snapchat Account:** The owner of the Snapchat account with the unique username "Cockybandz" appears to be the defendant DARREN THOMAS (the "THOMAS Snapchat Account), based on the following facts, among others:

    i. Based on my review of publicly available data from Facebook, I have learned, in part, that THOMAS also owns a Facebook account under the name "Darren Thomas." In addition, this "Darren Thomas" Facebook account features a profile photograph that I recognize as THOMAS based on, among other things, my comparison with other photographs of THOMAS in certain state databases (the "THOMAS Facebook Account").

    ii. In a public posting on the THOMAS Facebook Account, THOMAS identified "cockybandz" as his Snapchat username.

  f. **CAMERON Snapchat Account:** The owner of the Snapchat account with the unique username "SeseAlmighty" appears to be the defendant SIERRA CAMERON (the "CAMERON Snapchat Account"), based on the following facts, among others:

    i. CAMERON also owns a Facebook account, identified as belonging to her because it is under the name "Sierra Cameron" and features a profile photograph that I recognize to be CAMERON based on, among other things, my comparison to other photographs of CAMERON from certain state databases (the "CAMERON Facebook Account").

ii. In a public posting on the CAMERON Facebook Account, CAMERON identified "SeseAlmighty" as her Snapchat username.

### A. INCIDENTS INVOLVING AND RELATED TO VICTIM BUSINESS-1

#### Communication about Victim Business-1:
#### ROBBIE BLACK and WIDOLPH BRUMAIRE

8. Based on my review of social media postings and messages obtained from a search warrant for the BLACK Snapchat Account, I have learned, among other things, that:

   a. On or about August 19, 2017, ROBBIE BLACK, the defendant, forwarded via Snapchat a photograph of a check to WIDOLPH BRUMAIRE, the defendant (the "August 19 Legitimate Check").

9. Based upon my review of the photograph of the August 19 Legitimate Check, and related bank records, I have learned, among other things:

   a. The August 19 Legitimate Check was actually issued from the payroll account of a particular maintenance services business headquartered in Babylon, New York ("Victim Business-1").

   b. This payroll account ("Victim Business-1's Payroll Account") was located at a particular nationwide bank ("Bank-1").

#### Subsequent Fraud:
#### WIDOLPH BRUMAIRE and SIERRA CAMERON

10. Based on my review of bank records and surveillance footage obtained from a particular bank ("Bank-2"), as well as my familiarity with WIDOLPH BRUMAIRE and SIERRA CAMERON, the defendants, and my comparison of individuals in the surveillance footage with images of these defendants from state databases, I have learned the following, in substance and in part:

   a. On or about August 22, 2017, at or around 4:35 p.m., an unknown co-conspirator deposited into a collusive accountholder's bank account ("Collusive Accountholder-1," "Collusive Account-1") two checks, totaling approximately $1,200. These checks were determined to be fraudulent (the

"August 22 Fraudulent Checks") based on the following facts, among others:

    i. The August 22 Fraudulent Checks used the account information, routing number, and business name and address of Victim Business-1 and Victim Business-1's Payroll Account at Bank-1. Based on my discussions with a representative from Victim Business-1, I have learned that the August 22 Fraudulent Checks were not authorized by Victim Business-1 and were determined to be fraudulent.

   b. CAMERON and BRUMAIRE were involved in contemporaneous fraudulent activity involving Collusive Account-1. On or about August 18, 2017, at or around 7:58 p.m., outside of a Brooklyn, New York branch of Bank-2, CAMERON and BRUMAIRE deposited via ATM, into Collusive Account-1, a $1,400.67 check. This check was determined to be fraudulent (the "August 18 Fraudulent Check") based on the following facts, among others:

    i. The August 18 Fraudulent Check showed the name and address of an existing business, which had an account at a particular national bank ("Bank-3"). Based upon my discussions with Bank-2 investigators, I have learned that Bank-2 received a Letter of Indemnity from Bank-3, the remitting bank, which provided notification that Bank-3, in discussions with its accountholder, had determined that the check was fraudulent and was thus returning it.

   c. On or about August 22, 2017, at or around 2:44 a.m., in a Brooklyn, New York branch of Bank-2, CAMERON, in a series of ATM transactions, withdrew approximately $1,180 from Collusive Account-1.

   d. Based upon my training and experience, I believe that CAMERON and BRUMAIRE were in possession of, and using, Collusive Accountholder-1's bank card and personal identification number ("PIN").

### Subsequent Fraud: ROBBIE BLACK

 11. Based on my review of bank records and surveillance footage obtained from Bank-1, as well as my familiarity with ROBBIE BLACK, the defendant, and my comparison of the individual in the surveillance footage with images of the defendant from state databases, I have learned the following, in substance and in part:

  a. On or about August 24, 2017, at or around 3:00 p.m., ROBBIE BLACK, the defendant, entered a Bank-1 branch in Brooklyn, New York with two female co-conspirators not named as defendants herein ("CC-1" and "CC-2"). CC-1 and CC-2 deposited via the teller window into a collusive accountholder's bank account ("Collusive Accountholder-2," "Collusive Account-2") a $3,645.21 check. This check was determined to be fraudulent ("August 24 Fraudulent Check"), based on the following facts, among others:

  i. The August 24 Fraudulent Check showed the account information for Victim Business-1's Payroll Account but attributed the account to a different business that had no connection, or authorization over, the listed account. The August 24 Fraudulent Check attributed the account and routing information, located at Bank-1, to an incorrect national bank (the "Bank S Logo").

  b. The August 24 Fraudulent Check used a distinctive signature beginning with what resembles a capital "R" (the "'R' Check Signature").

  c. On or about August 24, 2017, at or around 4:00 p.m., BLACK posted a photograph to the BLACK Snapchat Account that showed a Bank-1 Transaction Receipt, reflecting a deposit in the amount of $3,645.21.

  d. On or about August 24, 2017, at or around 4:05 p.m., BLACK entered a different branch of Bank-1 in Brooklyn, New York. BLACK made two ATM withdrawals from Collusive Account-2 in the total amount of approximately $1,000.

12. Based on my review of related bank records and surveillance footage from Bank-1, and discussions with Bank-1 investigators, I have learned, in substance and in part, the following:

  a. At least fifteen other checks, all of which were identified as fraudulent by the remitting banks, show the "R" Check Signature and the incorrect Bank-S Logo that appears on the August 24 Fraudulent Check. These fraudulent checks had a total value of $47,640.61.

  b. The same individual appears on Bank-1's surveillance footage for either the deposits or withdrawals associated with all fifteen checks. Based on my review of the

9

surveillance footage, and my familiarity with ROBBIE BLACK, the defendant, from past investigations, I have identified this individual as BLACK.

        c. BLACK made at least one such withdrawal, in the amount of $1,000, from a particular Bank-1 branch in Manhattan, New York, on or about September 21, 2017, at or around 4:37 p.m.

### B. INCIDENTS INVOLVING AND RELATED TO VICTIM BUSINESS-2

#### Communication about Victim Business-2: WIDOLPH BRUMAIRE and SIRE GAYE

13. Based on my review of content from the BRUMAIRE Snapchat Account pursuant to a search warrant, I have learned, among other things, the following:

        a. On or about August 31, 2017, at approximately 8:21 p.m., WIDOLPH BRUMAIRE, the defendant, received via Snapchat a photograph of a check ("August 31 Legitimate Check") from SIRE GAYE, the defendant.

14. Based upon my review of the photograph, and related bank records, the August 31 Legitimate Check was actually issued from the payroll account of a restaurant business headquartered in Manhattan, New York ("Victim Business-2"). This account ("Victim Business-2's Payroll Account") was located at Bank-2.

#### Subsequent Fraud: DARREN THOMAS and ANTHONY CASTILLO

15. Based on my review of bank records and surveillance footage from Bank-2, as well as my familiarity with DARREN THOMAS and ANTHONY CASTILLO, the defendants, and my comparison of the individuals in the surveillance footage with images of THOMAS and CASTILLO from state databases, I have learned, in substance and in part, the following:

        a. On or about October 6, 2017, at or around 7:06 p.m., at a Manhattan, New York bank branch of Bank-2, DARREN THOMAS, the defendant, deposited via ATM into a collusive accountholder's bank account ("Collusive Accountholder-3," "Collusive Account-3") a check in the amount of $3,427.61, which showed the account information for Victim Business-2's Payroll Account.

b.  On or about October 6, 2017, at or around 7:28 p.m., at the same Manhattan, New York branch of Bank-2, ANTHONY CASTILLO, the defendant, accompanied by THOMAS, deposited via ATM into a particular collusive accountholder's bank account ("Collusive Accountholder-4," "Collusive Account-4") a check in the amount of $5,123.37, which showed the account information for Victim Business-2's Payroll Account.

c.  Based on my later discussions with investigators at Bank-2, I have learned that the checks that THOMAS and CASTILLO deposited on the evening of October 6, 2017 were determined to be fraudulent because, among other things, they were not authorized by Victim Business-2.

d.  In making the ATM deposit into Collusive Account-3, THOMAS typed the deposited amount as 61 cents, while the fraudulent check actually showed an amount of $3,427.61. Later the same day, Bank-2 issued a customer credit adjustment in the amount of $3,427.

e.  In making the ATM deposit into Collusive Account-4, CASTILLO typed the deposited amount as 37 cents, while the counterfeit check actually showed an amount of $5,123.37. Later the same day, Bank-2 issued a customer credit adjustment in the amount of $5,123.

f.  On or about October 7, 2017, at or around 9:55 a.m., at the same Manhattan branch of Bank-2, an unknown co-conspirator not named as a defendant herein ("CC-3") withdrew via the teller window approximately $4,930 of fraudulently deposited funds from Collusive Account-3.

g.  Based on my discussions with investigators at Bank-2, I have learned that on or about October 6, 2017, Bank-2 placed a hold on the check deposited into Collusive Account-4 because of suspected fraud, and, on or around October 10, 2017, Collusive Account-4 itself was frozen. No subsequent withdrawals were made from this account.

### C. SHARED COLLUSIVE ACCOUNTS

#### Collusive Accountholder-5:
#### WIDOLPH BRUMAIRE, PIERRE SCHNEIDER, and ROBBIE BLACK

16.  Based on my involvement in the investigation, and my review of Snapchat content from the defendants' accounts, I have

learned that the defendants share personal identifying information regarding possible collusive accountholders.

17. Based upon my review of bank records and surveillance footage from Bank-2, as well as my familiarity with WIDOLPH BRUMAIRE and PIERRE SCHNEIDER, the defendants, and my comparison of the individuals in the surveillance footage with images of BRUMAIRE and SCHNEIDER, I have learned, in substance and in part, the following:

    a. On or about August 11, 2017, at or around 6:10 a.m., SCHNEIDER, in a Manhattan, New York branch of Bank-2, withdrew $600 via ATM from a particular collusive account ("Collusive Accountholder-5," "Collusive Account-5"). Based on my training and experience, I believe that SCHNEIDER was in possession of Collusive Accountholder-5's ATM card and PIN number.

    b. SCHNEIDER's withdrawals on or about August 11, 2017 followed earlier fraudulent activity related to Collusive Account-5. On or about August 9, 2017, an unknown co-conspirator deposited into Collusive Account-5 two checks, together valued at $1,484.99. These checks were determined to be fraudulent based on the following facts ("August 9 Fraudulent Checks"), among other things:

        i. The August 9 Fraudulent Checks showed the name of an existing Brooklyn-based restaurant business ("Victim Business-3"), which had a commercial account located at Bank-2. Based on my conversation with Bank-2 investigators and my review of related records, I have learned that Victim Business-3 reported unauthorized activity involving its account in August, and later confirmed that these August 9 Fraudulent Checks were not authorized.

    c. On or about August 25, 2017, at or around 4:30 p.m., in a Brooklyn, New York Bank-2 branch, BRUMAIRE and a female co-conspirator not named as a defendant herein ("CC-4") deposited via ATM into Collusive Account-5 two checks, together valued at $1,600. These checks were determined to be fraudulent ("August 25 Fraudulent Checks"), based on the following facts, among others:

        i. The August 25 Fraudulent Checks drew from the business checking account at Bank-2 of a Manhattan-based real estate-related limited partnership ("Victim Business-4"). Based on my discussions with Bank-2 investigators, I have learned that

12

Victim Business-4 learned of unauthorized activity involving its commercial account beginning approximately in August and notified Bank-2. Bank-2 later verified that the August 25 Fraudulent Checks were not authorized by the accountholder, Victim Business-4, and were fraudulent.

18. Based on my review of social media messages from the BRUMAIRE Snapchat Account pursuant to a search warrant, I have learned, among other things, the following:

        a. On several occasions, WIDOLPH BRUMAIRE and PIERRE SCHNEIDER, the defendants, shared information about, or related to, collusive accountholders.

        b. On or about September 22, 2017, SCHNEIDER sent BRUMAIRE personal identifying information regarding someone who appeared to be a potential collusive accountholder from another national bank ("Bank-4").

        c. On or about October 12, 2017, BRUMAIRE sent a message to SCHNEIDER alluding to activity involving various banks: "Lika gotta old citi and wells and 2 tds take those from her if anything bring em out here." Based upon my knowledge and experience, I believe BRUMAIRE was referring to debit cards that he wanted SCHNEIDER to retrieve.

        d. On or about September 1, 2017, at or around 11:53 a.m., BRUMAIRE sent photographs to ROBBIE BLACK, the defendant. These photographs provided the checking and savings account information of Collusive Accountholder-5 for accounts at another national bank ("Bank-5").

### Collusive Accountholder-6:
### ROBBIE BLACK, WIDOLPH BRUMAIRE, DARREN THOMAS, and SIERRA CAMERON

19. Based on my review of social media messages from the BLACK Snapchat Account obtained from the social media company Snapchat pursuant to a search warrant, I have learned, among other things, the following:

        a. On or about November 15, 2017, at or around 5:00 p.m., ROBBIE BLACK, the defendant, communicated via Snapchat with WIDOLPH BRUMAIRE, the defendant. BLACK sent BRUMAIRE a message with personal identifying information, including full name, address, and online log-in information, of

a particular individual ("Collusive Accountholder-6," "Collusive Account-6") identified as possessing an account at Bank-4.

   b. On or about November 15, 2017, at or around 10:39 p.m., and on or about November 16, 2017, at or around 12:09 a.m., BLACK sent two messages to SIERRA CAMERON, the defendant. BLACK provided to CAMERON Collusive Accountholder-6's personal identifying information, including full name, address, as well as the last four digits of Collusive Accountholder-6's social security number, and date of birth.

   c. On or about November 21, 2017, at or around 8:31 p.m., BLACK sent two messages to DARREN THOMAS, the defendant. BLACK again provided the full name and address of Collusive Acountholder-6 and sent a screenshot showing what appeared to be an account balance from Bank-2's mobile application.

 20. Based upon my discussions with investigators at Bank-4, and my review of related records, I have learned the following:

   a. On or about November 16, 2017, a check in the amount of $1,560.19 was deposited into Collusive Account-6. Bank-2 returned the check as fraudulent on or about November 21, 2017.

   b. On or about November 21, 2017, ROBBIE BLACK, the defendant, sent SIERRA CAMERON, a message via Snapchat saying, in sum and substance and in part, that the card was "clipped." Based on my training and experience, I believe that BLACK was referring to the fact that Collusive Account-6 was frozen for fraud.

 21. From my review of publicly available materials, as well as my training and experience, I know that, at all relevant times, the deposits of Bank-1, Bank-2, Bank-3, Bank-4, and Bank-5 were insured by the Federal Deposit Insurance Corporation.

 22. Based on my review of bank records including security footage, and discussions with inspectors at multiple national banks, the bank fraud scheme described herein is responsible for losses in the amount of $153,559.95.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of ROBBIE BLACK, WIDOLPH BRUMAIRE, DARREN THOMAS, SIERRA CAMERON, SIRE GAYE, PIERRE SCHNEIDER, and ANTHONY CASTILLO, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

DANIEL HERZOG
Detective, New York Police Department

Sworn to before me this
9th day of February, 2018

THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK